BISHOP BAKING COMPANY,
INC., Appellant,

v.

Lura R. FORGEY, Appellee.

Supreme Court of Tennessee.

June 7, 1976.

Mayo L. Mashburn, Bell, Painter, McMurray, Callaway, Brown & Mashburn, Cleveland, for appellant.

Gene Sinor, Cleveland, for appellee.

OPINION

HENRY, Justice.

To the extent that it seeks permanent partial disability benefits, this is an utterly

frivolous workmen's compensation action which should have been dismissed, in this respect, in the trial court on the basis of there not being a glimmer, spark, scintilla or iota of supporting evidence.

### I.

Compensation was claimed on the basis of an injury resulting from lifting a tray of cookies from a conveyor belt.

Suit was instituted on 15 December 1973 and was set for trial on 9 May 1974. An order was entered *nunc pro tunc* on 12 July 1974, reciting its rendition on 7 May 1974, and removing the case from the trial docket and continuing it until the next term of court "in order for the Plaintiff to take *required medical proof.*" (Emphasis supplied). The case was actually heard, however, on 11 June 1974.

Upon the hearing the plaintiff was the sole witness in support of the claim. After the close of the proof, the following colloquy ensued between the trial judge and counsel:

> The Court: Do you have any medical proof?
>
> Mr. Sinor: No, I do not, your Honor.
>
> The Court: Are you here for temporary or—
>
> Mr. Sinor: Just temporary only, your Honor. While I feel that there's permanent disability, permanent partial, we have no proof of it.

.   .   .   .   .

Counsel went on to advise the court that if the court found that she was entitled to receive treatment, she could be sent to a doctor of the court's choice for treatment or examination and the permanent partial could be determined later. After an extended colloquy between the court and counsel, the court agreed to look over two doctors' statements and to determine whether to order that medical depositions be taken. The court advised counsel:

I'll let you know my decision this morning.

*Four months and six days* later the trial judge put down an order *sua sponte* order-ing claimant to submit to an examination before Dr. George W. Shelton, a Chattanooga physician, for examination and evaluation, with directions to the doctor "to report his findings and opinions  .   .   .  directly to this Court  .   .   ."

Dr. Shelton reported on 2 December 1974. *Two months and twenty-one days* later (Feb. 21, 1975) the Chancellor handed down a decision in open court which was the subject of an order entered *seven months and twenty-four days* later (15 Oct. 1975).

From the above narration it will be evident that from the date of the trial (11 June 1974) until the entry of final decree (15 Oct. 1975) a total of *sixteen months* elapsed. From the date of the rendition of the doctor's report (2 December 1974) until the final decree *over ten months* elapsed.

■ The policy of the law in compensation cases requires a speedy trial. *Stovall v. General Shoe Corp.,* 204 Tenn. 358, 321 S.W.2d 559 (1959). Indeed, § 50–1018, T.C.A. requires that compensation cases "be expedited by (a) giving all such cases priority over all other cases on the trial docket  .   .   .  other than cases involving state revenue;  .   .   ."

### II.

The Chancellor's decision, based obviously upon Dr. Shelton's letter report of 2 December 1974 was, to the effect and to the extent here, pertinent, that claimant had sustained a five percent (5%) permanent partial disability to the body as a whole.

We reiterate, this was on the basis of the presentation of medical testimony, by letter, and not under oath. Sec. 50–1004, T.C.A. affords clear authority for a trial judge, on his own motion, to "appoint a neutral physician  .   .   .  to make an examination of the injured person and report his findings to the court."

■ This wholesome provision in the Compensation Law was designed to protect the mutual interests of parties litigant in doubtful or marginal cases, or those wherein the medical testimony was in strong con-

**604**

flict, by enabling the trial judge to procure the counsel of a qualified and neutral physician, as an aid to the further *procedural* disposition of the case. It was never intended that such reports so obtained would be admissible in evidence, *per se.* Obviously to make such a report admissible under the orderly rules of trial procedure and the accepted rules of evidence, it must be stipulated by the parties, or the matter contained therein must be presented by the medical witness in open court or by deposition, with full opportunity for counsel to examine ánd cross-examine.

However, assuming *arguendo,* the admissibility of the doctor's report, it was totally insufficient to establish the claim. He stated, in pertinent part:

> At this time this patient still has some subjective compláints as described with *no objective signs* to indicate that she might have any permanent disability from her alleged injuries. (Emphasis supplied).

Thus, the present posture of the case is that it is unsupported by any medical testimony, as is required in all but the most obvious cases. *Floyd v. Tennessee Dickel Distilling Co.,* 225 Tenn. 65, 463 S.W.2d 684 (1971).

Particularly significant, is another low back case, *Security Ins. Co. v. Hughes,* 529 S.W.2d 719 (Tenn.1975), relating to the requirement that in cases of this nature there be expert medical testimony.

### III.

The calendar of this Court is clogged with workmen's compensation cases. In many instances the appeals are wholly frivolous. In others the claims are frivolous and reach this level of review because they are improvidently decided in the lower court. It is true that the Workmen's Compensation Law is to be liberally construed in order to accomplish its intended purposes, but, it is not a social welfare statute, *Smith v. Tennessee Furniture Industries,* 212 Tenn. 291, 369 S.W.2d 721 (1963), nor may the sympathies of the Court control its de-termination. *Hughes v. Globe Co.,* 224 Tenn. 208, 452 S.W.2d 859 (1970).

It is of significance in this case that counsel for the claimant did not file a reply brief in this Court, nor present oral argument when the case was set for hearing.

We have statutory authority to award damages, costs, interest and expenses, to include attorneys fees, in cases wherein the appeal is frivolous or taken solely for delay. Sec. 27–124, T.C.A. This action may be taken by the Court on its own motion, or upon the motion of the aggrieved party. Unfortunately we have neither the statutory nor the inherent power to take similar action in a case wherein a bona fide appeal is taken from a frivolous suit improvidently decided.

Reversed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.